**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NEWPORT NEWS SHIPBUILDING AND
DRY DOCK COMPANY,
                          *Petitioner,*

v.

WESLEY E. CHERRY; DIRECTOR,
OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,
                          *Respondents.*

No. 00-1279

On Petition for Review of an Order
of the Benefits Review Board.
(99-472-BLA)

Argued: January 22, 2001

Decided: April 14, 2003

Before WIDENER and KING, Circuit Judges, and
David A. FABER, Chief United States District Judge for the
Southern District of West Virginia, sitting by designation.

Petition for review denied by published opinion. Judge King wrote
the opinion, in which Chief Judge Faber joined. Judge Widener wrote
a concurring and dissenting opinion.

## COUNSEL

**ARGUED:** Benjamin McMullan Mason, MASON, COWARDIN &
MASON, Newport News, Virginia, for Petitioner. Andrew David

Auerbach, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Jonathan H. Walker, MASON, COWARDIN & MASON, Newport News, Virginia, for Petitioner. Henry L. Solano, Solicitor of Labor, Carol A. De Deo, Associate Solicitor, Mark Reinhalter, Senior Attorney, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent Director.

---

## OPINION

KING, Circuit Judge:

Wesley Cherry injured his back at work on September 12, 1995. He is receiving ongoing "permanent partial disability" benefits from his employer, Newport News Shipbuilding & Dry Dock Company ("Newport News"), pursuant to §§ 4 and 8(c)(21) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901-950 (the "Act" or "LHWCA"). Newport News sought relief under § 8(f) of the LHWCA, which limits an employer's liability to two years of benefits when a pre-existing disability substantially aggravates a work-related injury.[1]

On January 6, 1999, an Administrative Law Judge (the "ALJ") denied the request of Newport News for relief under § 8(f). *Cherry v. Newport News Shipbldg. & Dry Dock Co.*, 98-LHC-41, Decision and Order Denying 8(f) Relief (Jan. 6, 1999) (the "ALJ Decision"). The

---

[1]Section 8(f) provides in pertinent part:

> [In] cases in which the employee has a permanent partial disability, found not to be due solely to that injury, and such disability is materially and substantially greater than that which would have resulted from the subsequent injury alone, the employer shall provide . . . compensation for one hundred and four weeks only.

33 U.S.C. § 908(f)(1). After 104 weeks, the Office of Workers' Compensation Programs ("OWCP"), which administers a special fund established by Congress, is responsible for disability payments if the employer is relieved under § 8(f). §§ 908(f)(2)(A), 944.

Benefits Review Board (the "BRB") affirmed on January 28, 2000. *Cherry v. Newport News Shipbldg. & Dry Dock Co.*, 99-0472, Decision and Order (Jan. 28, 2000) (the "BRB Decision"). Newport News now petitions for our review, *see* 33 U.S.C. § 921(c), asserting that the BRB Decision was in error. We disagree with Newport News, and we conclude that the BRB correctly decided that the ALJ Decision was supported by substantial evidence. Accordingly, we deny the petition for review.

## I.

## A.

Cherry began working for Newport News in 1980. On March 26, 1987, he was working as a pipefitter when he sustained an injury to his back while lifting heavy sections of pipe. Physicians employed by Newport News diagnosed Cherry with a lumbar strain. Cherry was placed on work restrictions for ten days, which limited his lifting to less than twenty pounds during that time period.

Over five years later, on September 15, 1992, Cherry again injured his back at work while lifting pipe. For this injury, Cherry was treated by Dr. James Reid, a Newport News company physician. Dr. Reid diagnosed Cherry with a lumbosacral sprain, and he placed Cherry on work restrictions for fourteen days. Under these restrictions, Cherry was prohibited from lifting more than thirty pounds, and he was also limited to "minimal bending and stooping."

On September 12, 1995 — almost three years after the second back injury incident — Cherry strained his back a third time. This time his injuries were not temporary, and Cherry's treating neurosurgical specialist, Dr. Alfred Magness, assigned Cherry to permanent work restrictions.

On May 13, 1998, Dr. Reid, in response to Newport News's request for a medical opinion about the cause of Cherry's disability, reviewed Cherry's medical records, including those relating to his own treatment of Cherry and Cherry's outside treatment. In his report, Dr. Reid concluded:

> Mr. Cherry's pre-existing condition of chronic back disability [was] permanent and serious. . . . Mr. Cherry's disability is not caused by his September 12, 1995 back injury alone, but rather his disability is materially contributed to, and made materially and substantially worse by his pre-existing chronic back disability[.] Mr. Cherry's September 12, 1995 injury was rather minor. If he had had a normal back, it would have resolved with no permanent disability.

On May 27, 1998, Newport News sent Dr. Reid's report to Dr. Magness and gave him the option of indicating whether he agreed with it. Dr. Magness indicated his agreement with Dr. Reid's report by checking a blank space on the transmittal letter and returning the letter to Newport News.

### B.

Newport News filed a petition for relief under § 8(f) of the LHWCA. Under § 8(f), an employer's liability for an employee's permanent partial disability caused by a work-related injury is limited to two years if the employer can affirmatively establish three elements: (1) the ultimate disability is caused in part by a pre-existing partial disability; (2) the pre-existing disability was manifest to the employer prior to the work-related injury; and (3) the ultimate disability materially and substantially exceeded the disability that would have resulted from the work-related injury alone, in the absence of the pre-existing condition. *See Director, OWCP v. Newport News Shipbldg. & Dry Dock Co.* (*Carmines*), 138 F.3d 134, 138-39 (4th Cir. 1998).

In this case, the ALJ considered the evidence proffered by Newport News, but found that Dr. Reid's report "does not support a conclusion" that Cherry suffered from a "pre-existing disability." ALJ Decision at 6. Alternatively, the ALJ held that Newport News "offered no evidence that [Cherry's] ultimate injury was materially and substantially worsened by the pre-existing conditions," determining that Dr. Reid's conclusions on the issue were "pure conjecture."[2] *Id.* Similarly,

---

[2]Although he did not do so, the ALJ could have questioned Dr. Reid's findings on additional grounds. To begin with, Dr. Reid is employed by

the ALJ found that Dr. Magness's indication of agreement with Dr. Reid on the transmittal letter was "without supporting evidence and accompanying analysis," and was of "little weight." *Id.* Accordingly, the ALJ held that Newport News had failed to affirmatively establish that it was entitled to relief under § 8(f), and he denied its request for relief. Newport News appealed the adverse decision to the BRB, which affirmed the ALJ in all respects.

## II.

In evaluating the BRB Decision, we must determine "whether the [BRB] observed its statutorily-mandated standard for reviewing the ALJ's factual findings." *Newport News Shipbldg. and Dry Dock Co. v. Stallings*, 250 F.3d 868, 871 (4th Cir. 2001) (quotations and citations omitted). Pursuant to § 921(b)(3) of the LHWCA, the ALJ's factual findings "shall be conclusive if supported by substantial evidence in the record considered as a whole." § 921(b)(3).

We have consistently described substantial evidence as "more than a scintilla but less than a preponderance." *Newport News Shipbldg. and Dry Dock Co. v. Faulk*, 228 F.3d 378, 380-81 (4th Cir. 2000) (citing *Elliott v. Adm'r, Animal & Plant Health Inspection Serv.*, 990 F.2d 140, 144 (4th Cir. 1993)). Furthermore, the ALJ's findings "may not be disregarded on the basis that other inferences might have been more reasonable. Deference must be given the fact-finder's inferences and credibility assessments, and we have emphasized the scope of review of ALJ findings is limited." *Newport News Shipbldg. & Dry Dock Co. v. Tann*, 841 F.2d 540, 543 (4th Cir. 1988).

## III.

There is no dispute that Cherry's pre-existing injuries of 1987 and 1992 were manifest to Newport News, thus establishing the second

Newport News, which of course stood to benefit from § 8(f) relief. Moreover, Dr. Reid's report is replete with clerical and medical errors, including an error in describing Cherry's hearing loss, as well as the proper medical standard for hearing loss. Although the question of Cherry's hearing loss is not before us, the ALJ found that "Dr. Reid misstated the standard for hearing impairment, misstated the evidence, and reached an entirely insupportable conclusion" on that issue. ALJ Decision at 6.

element of the three-element test. *See supra* Part I.B. Thus, the only issues arising in this petition for § 8(f) relief are whether the remaining two elements are satisfied, that is, (1) whether Cherry's back injuries in 1987 and 1992 constituted a pre-existing partial disability, and, if so, (2) whether his permanent disability was materially and substantially greater as a result.

The ALJ addressed these issues in alternative findings. He determined that (1) Cherry's previous back injuries did not constitute a pre-existing disability; and (2) that, even if Cherry had a pre-existing condition, his 1995 injury was not thereby made materially and substantially greater. Either of these findings, if sustained, would warrant denial of § 8(f) relief. Newport News assigns error on both issues, contending that the ALJ's findings are not supported by substantial evidence.

A.

The only evidence presented to the ALJ regarding the extent of Cherry's earlier back injuries — and the possible contribution of those injuries to his permanent disability — were the reports of Dr. Reid and Dr. Magness.[3] The ALJ, however, declined to credit the medical reports. Newport News contends that the "ALJ and Board substituted their medical opinion in place of the consistent and uncontradicted medical opinions of two treating physicians." Consequently, it maintains that there was no basis for the ALJ to rule that Newport News had not met its burden under § 8(f).

On this record, we have no trouble concluding that the ALJ reasonably determined that Cherry's temporary back injuries of 1987 and 1992 were not lasting physical problems that would constitute an "existing partial disability" under § 8(f). As then-Judge Scalia observed, "the mere fact of past injury does not itself establish disability. There

---

[3]Neither Cherry nor the Director submitted any evidence on this point. The ALJ instead rendered his decision based on stipulations entered into by the parties, as well as various exhibits submitted by Newport News. Significantly, the parties voluntarily agreed to forgo the opportunity to present live testimony and orally argue their respective positions before the ALJ.

must exist, as a result of that injury, some serious, lasting physical problem." *Director, OWCP v. Belcher Erectors*, 770 F.2d 1220, 1222 (D.C. Cir. 1985).

Although Newport News has put forth evidence that Cherry's previous back injuries were serious and permanent, inasmuch as they caused a "weakened defective back structure," we think the ALJ was well within his discretion to discredit this testimony as "pure conjecture . . . bereft of supporting data or medical analysis." ALJ Decision at 6. Furthermore, the medical evidence proffered by Newport News was countered by powerful circumstantial evidence: Cherry's previous injuries came with no permanent work restrictions, and Cherry successfully returned to work for several years between injuries. In a similar case, *CNA Ins. Co. v. Legrow*, 935 F.2d 430 (1st Cir. 1991), the Court of Appeals for the First Circuit analyzed a § 8(f) petition where the employee had suffered previous back injuries, but each time eventually returned to work without any restrictions. *Id.* at 433. In *Legrow*, the ALJ had granted the employer relief under § 8(f), but the Board reversed for lack of substantial evidence supporting the ALJ's decision. *Id.* at 435-36. The First Circuit affirmed the Board's reversal of the ALJ, noting that "Legrow resumed regular physical labor after recovering from each of his previous back injuries." *Id.* at 436.

Here, like the claimant in *Legrow*, Cherry resumed full and unrestricted work following both of his previous back injuries. That Cherry was medically cleared, without any restrictions — to lift heavy pipes — strongly suggests that he was not suffering from a partial disability on September 12, 1995, when he permanently injured his back. Thus, the ALJ's determination that Cherry did not suffer from a pre-existing disability is supported by substantial evidence.

B.

Since the ALJ properly found that Cherry did not have a pre-existing disability in 1995, our resolution of Newport News's contention that Cherry's putative condition contributed to his permanent disability is not essential to our determination of this appeal. However, because of an error made by the ALJ in that connection, we briefly address the issue.

The ALJ recognized the inescapable logic that a permanent partial disability cannot be made worse by a pre-existing disability if there is no pre-existing disability to begin with. In so concluding, however, the ALJ incorrectly asserted that "the Employer has offered no evidence with which I could quantify the degree of the September 12, 1995 back injury absent the pre-existing conditions." ALJ Decision at 6. This finding — although rendered irrelevant to our final decision — was significant in light of our holding in *Carmines*, under which an employer must show "quantification of the level of impairment that would [have ensued if the claimant were] not previously disabled." 138 F.3d at 139. The BRB accepted the ALJ's conclusion that Newport News failed to meet its quantification burden, noting that, under *Carmines*, "this finding alone is sufficient to preclude entitlement to Section 8(f) relief." BRB Decision at 5.

In *Carmines* we held that, in order to avail themselves of § 8(f) relief, employers must present evidence quantifying the degree of permanent partial disability the claimant would have suffered absent the pre-existing condition. 138 F.3d at 139, 143. The intent of § 8(f) is to remove the disincentive to employ persons with pre-existing conditions (who might be more susceptible to injuries that will ultimately be the responsibility of the employer) by relieving the employer of full liability for benefits when a pre-existing condition known to the employer causes or exacerbates a subsequent, work-related permanent disability. *Id.* at 138. We noted, however, that employers should not receive a windfall under § 8(f) just because the employee happened to have a pre-existing disability at the time of the permanent injury. *Id.* at 139. Thus, we concluded, employers were only entitled to relief to the extent the employee's permanent disability was made materially and substantially greater by the existence of the pre-existing condition. To determine whether this standard has been met, the employer must quantify the type and extent of disability the employee would have suffered in the absence of the previous injury, so that the "adjudicative body will have a basis on which to determine whether the ultimate permanent partial disability is materially and substantially greater." *Id.* (quoting *Director, OWCP v. Newport News Shipbldg. & Dry Dock Co.* (*Harcum*), 8 F.3d 175, 185-86 (4th Cir. 1993)).

In this instance, Newport News in fact introduced evidence (in the form of Dr. Reid's letter) that "[if Cherry] had had a normal back, [his

September 12, 1995 injury] would have resolved with no permanent disability." Thus, according to Dr. Reid's diagnosis, Cherry's condition was not merely exacerbated by the alleged pre-existing condition, it was entirely caused by that condition. In submitting its evidence from Dr. Reid, Newport News appropriately sought to satisfy the quantification requirement of *Carmines*. Therefore, the ALJ incorrectly concluded that Newport News had offered "no evidence [quantifying] the degree of the September 12, 1995 back injury absent the pre-existing conditions." This evidence, however, was properly rejected by the ALJ as "pure conjecture." *See Newport News Shipbldg. & Dry Dock Co. v. Ward*, No. 00-1978 (4th Cir. Apr. 14, 2003) (rejecting similar quantification evidence).

IV.

Pursuant to the forgoing, we deny Newport News's petition for review of the BRB's decision.

*PETITION FOR REVIEW DENIED*

WIDENER, Circuit Judge, concurring and dissenting:

I concur in the result for the sole reason outlined below.

The Benefits Review Board, on p.4 of its decision (J.A. 32), gave a reason to support its holding as the medical opinion relied on by Newport News "is insufficient to establish the claimant's hearing loss and prior two back injuries are pre-existing permanent partial disabilities, we affirm the administrative law judge's finding that employer did not establish this element of § 8(f) relief." That finding of the Board is supported by its evidentiary finding that "the [physical] restrictions expired three years before the 1995 injury and there was no evidence that these injuries disabled claimant at all once the restrictions expired." (J.A. 32). Thus, this decision by the Board is supported by substantial evidence.

Accordingly, I concur in the result, as stated.

Especially, however, I do not agree with the insertion of Part III.B of the opinion of the majority, which is acknowledged as unnecessary,

even by the majority, and as to its inclusion in the majority opinion, I respectfully dissent. The *Harcum-Carmines* rule is tangled enough, even without further discussion.